# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
July 27, 2010 Session

## DAVID HEARING v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Greene County**
**No. 08-CR-472     John F. Dugger, Jr., Judge**

---

**No. E2009-02430-CCA-R3-PC - Filed October 4, 2010**

---

The petitioner, David Hearing, appeals the denial of his petition for post-conviction relief wherein he challenged his 2005 guilty-pleaded convictions of felony murder. In this appeal, he contends that he was denied the effective assistance of counsel and that his guilty pleas were not knowingly, voluntarily, and intelligently entered. Because the petitioner failed to establish his claims by clear and convincing evidence, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Troy L. Bowlin, II, Morristown, Tennessee, for the appellant, David Hearing.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Connie Trobaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On September 2, 2005, the petitioner entered pleas of guilty in the Greene County Criminal Court to two counts of felony murder in exchange for concurrent sentences of life imprisonment and the dismissal of other charges. The convictions related to the murder of Ance "Pete" Pratt and his wife, Rebecca Pratt, at their home in Hancock County. Following the State's filing of its notice of intent to seek the death penalty, but prior to the entry of the guilty pleas in this case, trial counsel successfully moved the trial court for a change of venue to Greene County. Less than 30 days after he entered his pleas, the

petitioner filed a motion to withdraw them on grounds that his trial counsel had performed deficiently by misrepresenting the terms of the plea agreement and that his guilty pleas were not, therefore, knowingly and voluntarily entered. The trial court ordered, sua sponte, that the motion be treated as a petition for post-conviction relief and appointed counsel ("motion counsel") to represent the petitioner in the post-conviction proceeding.

Following an amended motion and evidentiary hearing, the trial court denied post-conviction relief, finding "that the petitioner's trial counsel were effective and that the pleas were made voluntarily." *David Wayne Hearing v. State*, No. E2006-00362-CCA-R3-PC, slip op. at 2 (Tenn. Crim. App., Knoxville, Dec. 28, 2006) (*Hearing I*). On appeal of the denial of post-conviction relief, this court found that although neither of the parties contested the trial court's treating the motion to withdraw the petitioner's guilty pleas as a petition for post-conviction relief, "the trial court erred in this regard and that the case should be remanded to the trial court for consideration of the petitioner's original motion to withdraw his guilty pleas." *Id.*

On remand, the petitioner claimed that he was entitled to withdraw his guilty pleas because his trial counsel were ineffective and because his guilty pleas were not knowingly, voluntarily, and intelligently entered. *See State v. Crowe*, 168 S.W.3d 731, 742 (Tenn. 2005) (holding that withdrawal of a guilty plea "to correct manifest injustice is warranted where: (1) the plea 'was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily'; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.") (footnotes omitted)). The trial court, based on the evidence presented at the earlier evidentiary hearing, concluded that the petitioner had failed to establish a manifest necessity requiring the withdrawal of his guilty pleas.[1] *See David Wayne Hearing v. State*, No. E2007-00778-CCA-R3-PC, slip op. at 2 (Tenn. Crim. App., Knoxville, Feb. 22, 2008) (*Hearing II*). Specifically, the trial court concluded

> "that the petitioner was not coerced into accepting the plea agreement, that no false promises were made to him regarding the length of service of his sentences, that he had no conflict of

---

[1]The trial judge that took the petitioner's pleas and presided over the initial "post-conviction" proceeding did not preside over the case upon remand. The second judge noted in the record that he had reviewed the record in its entirety before rendering a decision on the petitioner's motion to withdraw his guilty pleas.

-2-

interest with his counsel and that he did receive effective assistance of counsel.

This [c]ourt further finds from the credible evidence that the guilty pleas were entered voluntarily, understandingly, knowingly, and intelligently, that there was no misunderstanding as to their effect, that the pleas were not entered through fear or fraud, and that there was no denial of due process."

*Id.*, slip op. at 5-6. On appeal, this court, utilizing the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), determined that the petitioner had failed to establish prejudice occasioned by the "myriad" alleged deficiencies in the performance of the petitioner's trial counsel. *Id.*, slip op. at 7-9. This court also found that "the transcript of the guilty plea hearing reflects that his plea was knowingly and voluntarily entered." *Id.*, slip op. at 9. Accordingly, this court concluded "that the petitioner did not carry his burden of demonstrating that his pleas were unknowingly and involuntarily entered." *Id.*, slip op. at 12.

Following the supreme court's denial of his application for permission to appeal on June 23, 2008, *see David Wayne Hearing v. State*, No. E2007-00778-SC-R11-PC (Tenn. June 23, 2008), the petitioner filed a petition for post-conviction relief on December 29, 2008. In the petition, the petitioner alleged that motion counsel performed deficiently by permitting the trial court to treat the proceeding as a post-conviction action, by failing to provide sufficient evidence to support the petitioner's "claims of [i]nvoluntary [p]lea and [i]neffective assistance of [c]ounsel during his evidentiary hearing," and by failing to argue that the judgments "were both void and voidable." The post-conviction court appointed counsel, and counsel filed an amended petition for post-conviction relief adding as a ground for relief that motion counsel performed deficiently on appeal by failing to argue that there was a conflict of interest between the petitioner and his trial counsel.

At the evidentiary hearing held on September 2, 2009, motion counsel testified that he was appointed to represent the petitioner in his post-conviction proceeding. He stated that "the order that Judge Beckner actually entered said . . . that [the petitioner] had filed a motion to withdraw his guilty plea but that that must be treated as a petition for post-conviction relief" and that he had been "appointed . . . in that regard." Motion counsel testified that he allowed the petitioner's motion to withdraw his guilty plea to proceed as a post-conviction petition because the trial court's order appointing him to the case "specifically said that his motion to withdraw a guilty plea must be treated as a petition for post-conviction relief." He explained, "I just followed the directive in the court order that appointed me to represent him on a post-conviction petition."

Regarding the petitioner's claim that he failed to provide sufficient evidence to support the claims of ineffective assistance of counsel and involuntary guilty plea raised in the petitioner's motion to withdraw his guilty pleas, motion counsel testified that he investigated each of the petitioner's claims and raised them to the best of his ability, noting that he prepared a log of all the petitioner's visits with his trial counsel, presented all relevant plea documents, and elicited testimony from the petitioner that he felt pressured by his trial counsel to enter into the plea agreement. He said, "[T]he ultimate argument that we made at the hearing and then again at the . . . Court of Criminal Appeals was that he was really placed in the untenable position of proceeding with counsel that he didn't feel comfortable with, that weren't working diligently to represent him, or take a plea."

Motion counsel stated that he also argued that the sentence provided for in the plea documents, life with the possibility of parole, was not a valid sentence. He testified that although the original judgment sheets contained an erroneous sentence of 51 years, "the judgment sheets have been amended to reflect what the proper sentence would be." He noted his concern that "those are judgment sheets that [the petitioner] would not have seen until after he had actually entered his plea."

Motion counsel testified that "the biggest problem" they faced in proceeding on the petitioner's claim that his pleas were involuntary and unknowing was "the transcript of the actual allocution and plea," which established that the trial judge had explained the conditions of the plea "very thoroughly" and that the petitioner had "affirmatively answered his questions" and "said that [he] understood what the sentence was." He stated that the waiver of rights and guilty plea submission form, both of which were signed by the petitioner, indicate that the petitioner was to enter pleas of guilty to two counts of felony murder in exchange for concurrent sentences of life imprisonment.

Motion counsel testified that although he and the petitioner discussed "what his viable defense theories could have been" had he proceeded to trial, they did not arrive at "one coherent theory to assert other tha[n] it essentially involved his ex-wife, Leah, at that time and that she had played some type of role in . . . including him or portraying him as a person that helped to commit this offense." Motion counsel noted that evidence available to the State belied the petitioner's claimed lack of knowledge of the offenses to the point that motion counsel did not feel he "could assert a viable defense theory really on a good faith basis." He said, "He wanted to criticize [his trial counsel] for not doing more work to develop that . . . . I understood his concerns . . . but I don't know, really, what else I could have done or how I could have helped him to develop a viable defense theory at that time." Motion counsel opined that "it would . . . have been difficult, not impossible but difficult, to craft a viable defense theory around the evidence that [the petitioner] was confronted with."

-4-

Motion counsel testified that he did, in fact, argue on appeal that the petitioner had a conflict with his trial counsel. He stated that he presented the petitioner's pro se motion to remove his trial counsel as an exhibit at the evidentiary hearing and that he argued in his brief that the petitioner had requested the removal of trial counsel and that the petitioner's sister had filed a complaint against trial counsel with the Board of Professional Responsibility. He explained,

> I know I raised that at the original post-conviction and in front of the Court of Criminal Appeals, that that was a potential conflict, and that it would be difficult for him to maintain a good working relationship and a degree of trust with the attorneys when he had filed with the court openly a motion that said they were ineffective and had filed a Bar complaint against them.

During cross-examination, motion counsel stated that he did not argue that the petitioner's motion to withdraw his guilty pleas be treated as other than a post-conviction petition because the trial court had already ruled on the issue. He testified that following this court's remand of the case, he moved the new trial judge for another evidentiary hearing to argue the case under the manifest injustice standard.[2] That motion was denied.

Motion counsel agreed that the negotiated plea agreement contains notations that the defendant is a standard offender pleading guilty to a Class A felony, but he stated that the form also indicated a sentence of life and no release eligibility percentage. He testified that the plea agreement "coupled with the transcript of his actual plea . . . and the waiver of rights and guilty plea, the other document that was introduced that says his sentence is life, . . . it was pretty clear." He stated that it was not reasonable for the petitioner to think he would receive a Range I Class A sentence of 15 to 25 years because "it's written in, life with the possibility of parole." Motion counsel testified that he did not believe he could have used the original judgment forms to establish that the petitioner's pleas were not knowing "because [the petitioner] didn't sign that document. He didn't review that document. That was done after he had entered his guilty plea." He added, "So I don't see any way that I could have used that to assert that he was confused about what his plea was because he didn't actually have knowledge of that beforehand."

Motion counsel reiterated that the only viable defense theory that he and the petitioner discussed was that the petitioner's ex-wife had "tried to frame him in some regard" and that he did not present that theory to the court because "that was a stretch, and . . . as an

---

[2]The original trial judge had retired by the time the case was remanded to the Greene County Criminal Court.

officer of the court, [he] ha[d] a duty not to assert things that [he did not] have a good faith basis to do."

On redirect-examination, motion counsel testified that he questioned both of the petitioner's trial attorneys extensively regarding the contents of the waiver of rights and plea agreement documents. He stated that the trial judge had to review those documents as a part of the petitioner's entering his guilty pleas. Motion counsel testified that the petitioner was "very intelligent" and that he should have been able to understand the plea documents, particularly in light of the detailed plea hearing.

The petitioner testified that he believed motion counsel performed deficiently by failing "to present certain documents" and "viable defense theories" during the evidentiary hearing conducted on his motion to withdraw his guilty pleas. He claimed that motion counsel should have introduced the plea agreement to establish that the petitioner believed he would receive a Range I sentence for a Class A felony. The petitioner insisted that his trial counsel told him he would serve "[t]hirty percent on a standard offender." He stated that the document could have been used to rebut trial counsel's testimony at the evidentiary hearing that he did not mislead the petitioner in regard to his sentence. He claimed that his trial counsel told him that he would receive a sentence of "51 at 30, so you can get out in 15 years."

The petitioner testified that his was an involuntary plea "because [he] didn't plead guilty to a life sentence." He claimed that it was his belief that the trial judge's references to a life sentence or a sentence of 51 years referenced only what the petitioner would have faced following a trial rather than the sentence he had agreed to by pleading guilty.

The petitioner stated that motion counsel performed deficiently by allowing the motion to withdraw his guilty pleas to be treated as a post-conviction petition because the former proceeding would have been analyzed under the "lesser standard" of manifest injustice and, "[h]ad we presented the plea agreement, the viable defense theories, at a manifest injustice standard, [we] would have satisfied it." The petitioner enumerated the "viable defense theories" he wanted motion counsel to present:

> One of them was the fact that nobody ever told or give [sic] a statement that I killed anyone. They always said it was someone else. So I'm pleading guilty to a first-degree murder I didn't do. I got a letter where a guy that bragged about doing the murder.

-6-

> . . . . If you could look at the statements, I mean, it's never been denied that I drove and sold pot to the Pratts. It's not denied. I never denied that, but the intent to go and rob and kill somebody. It was not my intent.

The petitioner agreed with motion counsel that the two met "four or five" times and that each of the meetings lasted "for a few hours."

The petitioner stated that he filed a motion to remove his trial counsel because his trial counsel "was not presenting any viable defensive theories, and he just said it's all or nothing." He said that he and his counsel did not have "a working relationship." He insisted that had the trial court inquired into the motion or had motion counsel presented it to the court, "we could have at least presented the viable defensive theories." The petitioner claimed that his ex-wife "was mad about the whole thing" and that "she pointed the finger and set some things up." He added, "I mean, it was a viable defensive theory." He said that his trial counsel told him, "You have to take a plea deal or they're going kill you."

The petitioner admitted that he told the trial judge during the plea colloquy that he had no complaints about his trial counsel, but he insisted that the trial judge "knew that was a lie." He said, "[T]he D.A. knew it was a lie, and so did my counsel, because they knew I had filed that motion, but the only way to get the 51 at 30 was to agree in the affirmative to everything and say no to the complaint."

During cross-examination, the petitioner admitted that the plea documents did not indicate a release eligibility percentage of 30 percent. He also conceded that the trial judge examined the documents during the plea submission hearing, showed them to the petitioner, and asked the petitioner to identify his signature on the documents. He acknowledged that his trial counsel explained that, should he proceed to trial, he was facing a possible sentence of death and alternative sentences of life without the possibility of parole or life with the possibility of parole. He said that was why he agreed to the plea offer of "51 at 30."

The petitioner admitted that he was at the victims' residence on the day they were murdered but insisted that he "was collecting the money from marijuana" he had sold to the pair.

On redirect examination, the petitioner presented a letter from a Halerio Cardenas who, he explained, "was [a] co-defendant in this case that had wrote a guy in the Greene County Jail way before I had plead guilty but after he had." The petitioner claimed that Cardenas "was writing his buddy back here at the jail and explained to him that he got

two tattoo's of the 45's that he used in this murder with the bullets going through the skin dripping down in his victims' initials." He claimed he showed the letter to his trial counsel, but "[n]obody ever said nothing about them."

The petitioner's mother, Barbara Sue Townsend, testified that on the night before he pleaded guilty, the petitioner telephoned her at home and told her that if he accepted the plea offer he would "probably be out in about 15 years." She stated that she "assumed that to be correct" because trial counsel had implied that "they were fixing to make new laws about life sentences and all, and it would probably be about 15 years."

On cross-examination, Ms. Townsend stated that she could not remember whether she had testified at the previous evidentiary hearing. She admitted that she had previously told motion counsel that she believed he had done a good job on the petitioner's case.

The State called motion counsel as a rebuttal witness. Motion counsel testified that the petitioner had shown him the letter from Mr. Cardenas, and he identified Mr. Cardenas as one of the co-defendants who went by the name Larry. Motion counsel stated that Mr. Cardenas was also convicted of the first degree felony murder of the victims. As a result, it was motion counsel's opinion that the letter did not exonerate the petitioner. He stated that the letter could have been used by the State as "another way to confirm who [Mr. Cardenas] had killed if it were in fact the Pratts, and that [the petitioner] was present." He stated that he and the petitioner discussed the letter and its potential ramifications and that the petitioner did not ask him to "make that an issue."

During cross-examination, motion counsel testified that neither the petitioner nor Ms. Townsend told him that trial counsel had told Ms. Townsend that the petitioner would be paroled in 15 to 25 years. He said, "Had [the petitioner] told me about that or Ms. Townsend indicated that, I would have asked [trial counsel] about it. I probably wouldn't have enjoyed it but I would have asked him about it." Motion counsel stated that the use of the letter from Mr. Cardenas did not establish a viable defense theory and neither did the petitioner's claims regarding his ex-wife.

At the conclusion of the hearing, the post-conviction court took the petition under advisement. In a written order detailing its findings of fact and conclusions of law, the post-conviction court denied relief, holding that the petitioner had failed to establish by clear and convincing evidence that motion counsel performed deficiently.

In this appeal, the petitioner argues that in finding that motion counsel did not perform deficiently, the post-conviction court "abused its discretion and made factual

determinations on the evidence presented, which are unreasonable." He reiterates his claims that motion counsel performed deficiently by failing to introduce certain documents and make more persuasive arguments at the previous evidentiary hearing and on appeal. He also challenges many of the post-conviction court's factual findings as "erroneous." The petitioner also argues that his guilty pleas were not knowingly and voluntarily entered. The State asserts that the petitioner was not denied the effective assistance of counsel and that the issue whether the petitioner's guilty pleas were knowingly and voluntarily entered was previously determined. We agree with both assertions.

We view each of the petitioner's claims with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

## I. Ineffective Assistance of Counsel

The petitioner asserts that motion counsel performed deficiently by permitting his motion to withdraw his pleas to be treated as a petition for post-conviction relief, by failing to introduce into evidence at the previous evidentiary hearing the plea agreement, by failing to "provide sufficient evidence" to support the petitioner's original claims of ineffective assistance of counsel and involuntary guilty plea, and by failing to "prepare viable defenses." The petitioner makes a myriad of other claims of deficient performance that are completely lost in the barely intelligible morass that he has tried to pass off as an appellate brief.

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To do so, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to demonstrate that he likely would have fared better at trial than he did by pleading guilty, although evidence of this type can be persuasive that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner first asserts that motion counsel performed deficiently by permitting the petitioner's motion to withdraw his guilty pleas to be treated as a petition for post-conviction relief. Motion counsel testified that he never considered treating the motion as anything other than a petition for post-conviction relief because the trial court's order appointing him to the case specifically held that the motion "must" be treated as a petition for post-conviction relief. Even if counsel had performed deficiently in this regard, however, the petitioner cannot establish prejudice. Not only did motion counsel conduct a thorough evidentiary hearing on the issues raised in the original motion, but also the motion was eventually considered and denied following this court's initial remand. The petitioner is not entitled to relief on this issue.

-10-

The petitioner next contends that motion counsel performed deficiently by failing to introduce into evidence at the evidentiary hearing the plea agreement signed by the petitioner. He claims that the agreement would have supported his claimed belief that he had agreed to a sentence of 51 years at 30 percent service. The document itself, however, belies the petitioner's claims. Although the document contains an erroneous notation that the petitioner was pleading guilty to a Class A felony, it clearly states that the petitioner is pleading guilty to first degree murder in exchange for a sentence of "life with the possibility of parole." The notation that the petitioner is a standard offender does not alter that fact. Furthermore, any ambiguity that might have been occasioned by these notations was remedied by the very thorough explanation of the sentence and plea agreement by the trial court during the plea colloquy. One exchange, in particular, completely undercuts the petitioner's claims of ambiguity and misunderstanding:

> THE COURT: Did I correctly state it when I say that you will be sentenced to serve a determinant sentence of life with the possibility of parole in each count, those two counts to be served concurrently for a life sentence in each of the . . . counts? Is that your complete agreement and what you ask me to approve?
>
> THE DEFENDANT: Yes, sir.

Moreover, motion counsel testified that although he did not enter the document into evidence at the hearing, the document was a part of the trial record that was made an exhibit to the hearing, and he questioned trial counsel thoroughly regarding its contents. Under these circumstances, the petitioner has failed to establish that motion counsel performed deficiently by failing to offer the plea agreement into evidence at the original evidentiary hearing.

In related claims, the petitioner claims that motion counsel performed deficiently by failing to "provide sufficient support" for his claims of ineffective assistance of trial counsel and involuntary guilty plea and by failing to "prepare viable defenses."[3]

The record supports motion counsel's accredited testimony that he questioned trial counsel thoroughly at the evidentiary hearing and vigorously presented each of the petitioner's claims. It is unclear what the petitioner wanted motion counsel to do other than

---

[3]Initially we note that in relation to these claims, the petitioner, in his brief, makes numerous assertions of facts regarding the evidence of the petitioner's guilt that were not presented during the evidentiary hearing on his petition for post-conviction relief. This court will not consider facts in its analysis not presented to the lower court for consideration.

to perform "better." To obtain post-conviction relief on the basis of an ineffective assistance of counsel claim, the petitioner must establish a specific deficiency and prejudice arising from that deficiency. The petitioner has failed to do either with regard to his claim that motion counsel failed to sufficiently support the claims raised in the motion to withdraw the petitioner's guilty pleas. The post-conviction court held that motion counsel developed the petitioner's issues "the best that he could." We agree.

Motion counsel also testified that he and the petitioner discussed possible defenses that could have been raised at trial but that none of those defenses was supported by sufficient potential evidence to provide motion counsel with a good faith basis to present them at the first evidentiary hearing. The only "viable defense" offered by the petitioner at the post-conviction evidentiary hearing, that he had been framed by his ex-wife, was completely unsupported. Given the petitioner's failure to provide even via his own testimony any possible defense to the charged offenses after having two opportunities to do so, we cannot say that motion counsel performed deficiently by failing to present any alleged "viable defense" at the original evidentiary hearing. Furthermore, the record supports the post-conviction court's ruling that the omission of this information was "not significant enough to change any findings of the trial court." The petitioner is not entitled to relief on this issue.

## II. Voluntariness of the Guilty Pleas

The petitioner also claims that his guilty pleas were not knowingly, voluntarily, and understandingly entered because of "the erroneous advice" of his trial counsel, with whom he had a conflict of interest, that he would receive a sentence of 51 years to be served at 30 percent. The State contends that this issue has been previously determined. We agree with the State.

"A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." T.C.A. § 40-30-106(h). "A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." *Id.*

In his original motion to withdraw his guilty pleas, the petitioner alleged that the pleas were not knowingly, voluntarily, or understandingly entered because his trial counsel led him to believe that he would be sentenced to serve 30 percent of a 51 year sentence. Although the trial court erroneously treated the motion as a petition for post-conviction relief, the petitioner proceeded with his involuntary guilty plea claim and presented evidence on the claim at the original evidentiary hearing. The court concluded

that the pleas were voluntary under the typical post-conviction standard of proof. Following the remand of the case for reconsideration, the court again concluded that the guilty pleas had been voluntarily entered. This court, on appeal of the case after remand, utilized the standards enunciated in *Boykin v. Alabama*, 395 U.S. 238 (1969), and *State v. Mackey*, 553 S.W.2d 337 (1977), to determine that "the petitioner did not carry his burden of demonstrating that his pleas were unknowingly and involuntarily entered." *Hearing II*, slip op. at 12.

The claim raised by the petitioner in his petition for post-conviction relief and asserted on appeal is identical to that raised in his motion to withdraw his guilty pleas. That claim has been heard and considered and has, accordingly, been previously determined.

*Conclusion*

Because the petitioner has failed to establish that motion counsel performed deficiently and because his claim that his guilty pleas were not knowingly, voluntarily, or intelligently entered was previously determined, the post-conviction court did not err by denying relief. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE